IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FINANCIAL FEDERAL CREDIT, INC., | ) | |
| | ) | 8:08CV184 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| GARY L. WILLS, JAMES R. HILL, | ) | |
| WILLS, INC., and WILLS | ) | |
| DEVELOPMENT COMPANY, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on plaintiff Financial Federal Credit, Inc.'s ("FFCI")
motion for summary judgment pursuant to Fed. R. Civ. P. 56 against defendant James R.
Hill ("Hill"), the only remaining defendant in this case. Filing No. 61. FFCI sues Hill alleging
that Hill owes it pursuant to an unconditional guarantee of payment.

**BACKGROUND**

FFCI made a number of loans to Merit Transportation Company LLC ("Merit"). Merit
defaulted on the loans. Thereafter, FFCI sold the equipment owned by Merit for
$1,342,900.00. The balance of $265,525.91 remains due and owing to FFCI. Hill
guaranteed payment of these loans. Filing No. 12. FFCI has sued Hill for the shortfall that
remained after the sale, plus costs and attorney fees. The parties do not dispute whether
Merit owed the money; the parties do not dispute that Hill guaranteed the loans; and the
parties do not dispute the amount of the loans. The center of the dispute revolves around
the sale of the equipment by FFCI. FFCI argues that the contracts between it and Merit
specify what is a commercially reasonable sale. Hill argues that the sale was not
commercially reasonable as it (1) took place in a manner that allowed FFCI to purchase

nearly half of the 30 pieces of equipment, and (2) allowed the equipment to be sold at wholesale rather than retail prices.  Filing No. 69-2, Affidavit of James R. Hill.

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Harder v. ACANDS, Inc.*, 179 F.3d 609, 611 (8th Cir. 1999).  The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Therefore, if the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence.  *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).  If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial.  *Johnson v. Crooks*, 326 F.3d 995, 1006 (8th Cir. 2003).  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party."  *Id.*

In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party.  *Id.*  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations."  *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  "Where the unresolved

issues are primarily legal rather than factual, summary judgment is particularly

appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

## DISCUSSION

The Financing Document states:

(e) Secured Party may sell the Collateral by public or private sale, hold, retain in satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor;

(f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof.  Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. . . .

Filing No. 12, Ex. A. , Promissory Notes, ¶ 8.  On July 9, 2004,and on June 22, 2005, Hill

executed two personal guarantees on the above Merit contracts.  Merit thereafter defaulted

and filed bankruptcy.  FFCI then took possession of five Kenworth trucks and 25 trailers.

FFCI sent notice of a public sale.  Such notice was also sent to Hill, placed in the *Omaha*

*World-Herald*, and placed in a trade magazine known as Truck Paper.

According to FFCI, multiple bidders attended the public sale and there was competitive bidding. Other than FFCI, which placed credit bids on the equipment, persons who attended and registered to bid included representatives from Hofer Trailer Sales, Inc., Crossroads Trailer Sales, Taylor & Martin, Leaseco, Mid-States Utility, Omaha Cold Storage Terminals, the Florilli Corp., and Batten Trailer Leasing. Of the 30 items of equipment offered for sale on November 29, 2007, FFCI was the winning bidder on 14 items, Mid-States Utility was the winning bidder on 14 items, and Omaha Cold Storage Terminals was the winning bidder on two items. The aggregate sale price of the equipment was $1,342,900.00. After crediting the proceeds of sale to the debt owed to FFCI, there remained an unpaid balance of $265,525.91 plus interest, attorney's fees, and costs from November 29, 2007, forward. *See* Copple Supp. Aff. at ¶ 16, Filing No. 12.

Hill contends that the sale was not commercially reasonable and that FFCI failed to give him an accounting of the sale. Hill argues that FFCI failed to properly give notice, failed to properly advertise, and failed to offer it for sale to retailers. Hill contends that under Texas law a creditor cannot make a guarantor waive the requirement that a sale be commercially reasonable. Article 9, Texas U.C.C. ; Tex. Bus. & Comm. Code §§ 9.602 and 9.610(a).[1]  Section 9.610 states:

> a) After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
>
> (b) Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

---

[1] The parties appear to agree that Texas law applies.

> (c) A secured party may purchase collateral:
> (1) at a public disposition; or . . . .

Section 9.603 of the Texas Code does permit the parties to determine how sales will occur provided the sale is not "manifestly unreasonable."  *See also Morgan Buildings and Spas, Inc. v. Turn-Key Leasing, Ltd.*, 97 S.W.3d 871, 877 (Tex. Ct. App. 2003); and *Rabinowitz v. Cadle Co. II, Inc.*, 993 S.W.2d 796, 800 (Tex. Ct. App. 1999) (burden is on creditor to show sale was conducted in a commercially reasonable manner in order to recover the balance due after the sale).

Under Texas law, the burden is on FFCI to prove the reasonableness of the sale. Based on the evidence before the court, the court finds as a matter of law that the sale by FFCI was commercially reasonable.  The terms of the contract between FFCI and Merit are clear, and the contract specifically delineates terms allowing for a sale on the event of default, provided that notice of ten days is given, that notice is given to the debtor, and that the notice is in a newspaper of general circulation.  There is no conflict regarding whether those requirements occurred.   Further, the contract permits the secured party to purchase the equipment at the sale.  This is the method of disposition agreed to between the creditor and the debtor, and the debtor has not disagreed with FFCI's assertion that this is a commercially reasonable sale.  In fact, two defendants have stipulated that the sale was commercially reasonable.   Filing No. 58, at ¶ 5. Accordingly, the court will grant the motion for summary judgment and finds as a matter of law that the sale was commercially reasonable.[2]

---

[2]Because the court has determined the sale is commercially reasonable, it need not require an accounting, particularly where Hill admits he received an accounting "in an aggregate amount on all equipment . . . ."   Filing No. 68, at 9.

THEREFORE, IT IS ORDERED that FFCI's motion for summary judgment, Filing No. 61, is granted.  FFCI is awarded $265,525.91 for the deficiency, plus interest in the amount of $64,786.88, which is from November 29, 2007, through March 30, 2009, plus, interest from March 30, 2009, to the date of judgment in the amount of $132.76 per diem. Counsel for FFCI has fourteen days from the date of this order to brief the issue of attorney fees and costs.   Hill has fourteen days thereafter to respond to the request for attorney fees and costs.  A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 20th day of November, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Court Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.